## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| KENNETH J. TAGGART, | : | | |
| Movant/Appellant, | : | | |
| | : | No. | 22-cv-1031-JMY |
| vs. | : | | 22-cv-0475-JMY |
| | : | | 22-cv-0586-JMY |
| AJX MORTGAGE TRUST I, A | : | | |
| DELAWARE TRUST, WILMINGTON | : | Bankruptcy No. 21-12476-AMC | |
| SAVINGS FUND SOCIETY, FSB, | : | | |
| GREGORY FUNDING, LLC, GREAT AJAX | : | | |
| OPERATING PARTNERSHIP, LP, | : | | |
| Respondents/Appellees. | : | | |

## MEMORANDUM

**Younge, J.**                                                          December 6, 2022

Currently at issue are three appeals filed by Kenneth J. Taggart ("Taggart") from orders

entered by the Honorable Ashley M. Chan, United States Bankruptcy Judge, in relationship to a

voluntary bankruptcy petition filed by Taggart under Chapter 11 of the United States Bankruptcy

Code, 11 U.S.C. § 101, *et seq.* (the "Petition").  Taggart filed this Petition in the United States

Bankruptcy Court for the Eastern District of Pennsylvania, Philadelphia Division (the

"Bankruptcy Court") which was docketed as *In re Taggart*, 21-12476-AMC (the "Bankruptcy

Case").

In each of these three appeals, Taggart has filed a Motion for Stay of the Bankruptcy

Case (Taggart's "Motion to Stay").  (Motion to Stay, ECF No. 5 (*In re Taggart*, 22-cv-1031)

ECF No. 16 (*In re Taggart*, 22-cv-0475) ECF No. 10 (*In re Taggart*, 22-cv-0586).  AJX

Mortgage Trust I, a Delaware Trust, Wilmington Savings Fund Society, FSB, ("AJX"), Gregory

Funding, LLC ("GF"), and Great Ajax Operating Partnership, LP ("Ajax") (collectively,

"Respondents" or "Appellees") submitted a Response in Opposition to Taggart's Motion for

Stay, and Appellees/Respondents filed Motions to Dismiss each of the above-captioned

bankruptcy appeals.  (Opposition to Taggart's Motion for Stay and Cross Motion to Dismiss, ECF No. 8 (*In re Taggart*, 22-cv-1031) ECF No. 19 (*In re Taggart*, 22-cv-0475) ECF No. 14 (*In re Taggart*, 22-cv-0586).)

The Court finds this matter appropriate for resolution without oral argument.  See Fed. R. Civ. P. L.R. 7.1(f).  For the reasons set forth below, Appellees/Respondents' motions to dismiss appeals will be granted.

## I.      FACTUAL AND PROCEDURAL BACKGROUND:

On or about July 20, 2005, Taggart borrowed the sum of $120,000.00 (the "Loan") from Chase Bank, USA, N.A. ("Chase") to refinance an existing mortgage debt encumbering his rental property located at 7242 Saul Street, Philadelphia, Pennsylvania (the "Property").[1]  (See Ex. A A.1. 1.)  The Loan was evidenced by a promissory note in the aforementioned amount (the "Note"), under which Taggart acknowledged receipt of (and obligation to repay) the Loan proceeds, and agreed, among other things, to repay the funds in accordance with the terms in the Note.  (See Ex. AB.)  As security for this obligation, Taggart executed and delivered a mortgage agreement (the "Mortgage"), which granted Chase a first priority mortgage lien against the Property, as well as an assignment of rents, as set forth in the appended "1-4 Family Rider Assignment of Rents" (the "Assignment").  (See Ex. A-D, Notice of Security Interest in the Rents (AJX's "Notice of Security Interest")).

Taggart defaulted under the terms of the Mortgage by failing to make the monthly loan payment due March 1, 2009, and each month thereafter.  As set forth in Appellees/Respondents' motion to dismiss the adversary complaint filed against them in the Bankruptcy Case, Taggart

---

[1] Unless otherwise stated, all references to Exhibits will refer to Appellee's Appendix filed in appeal pending at No. 22-cv-0475.  When explaining the relevant facts and procedure, the Court also cites to the bankruptcy record as "Bankr. ECF No." or "Bankr. Transcr." and relevant portions of the CM/ECF docketing system for the above-captioned matters.

then embarked on his endless campaign of frivolous litigation seeking to avoid this (and other) obligations.  (Motion for Prospective In-Rem Relief page 3 n.1; Bankr. ECF No. 181 page 2.) As relevant here, this included a quiet title action which Taggart filed on January 13, 2015, in the Philadelphia Court of Common Pleas, which was docketed as *Taggart v. JP Morgan Trust 2006-A7, et al.*, No. 150101366 (the "quiet title action").  Taggart also filed this Bankruptcy Petition which was ultimately dismissed by the Bankruptcy Court when Taggart failed to put forth a viable plan for Chapter 11 reorganization.  (Order 5/4/22, Bankr. ECF No. 223.)

After Taggart defaulted on his mortgage it was assigned to AJX, as evidenced by the assignment of mortgage recorded in the Office of the Recorder of Deeds for Philadelphia County on May 1, 2020, as Instrument No. 53663097.  On September 1, 2020, AJX sent Taggart its notice of default and intent to foreclose along with its other statutory pre-foreclosure notices, and on or about October 21, 2020, AJX filed a foreclosure complaint in the Court of Common Pleas for Philadelphia County, which was docketed as *AJX Mortgage Trust I, a Delaware Trust, Wilmington Savings Fund Society, FSB, Trustee c/o Gregory Funding, LLC v. Kenneth J. Taggart*, No. 201001597 (the "Foreclosure Action").

On September 9, 2021, Taggart filed the Chapter 11 Bankruptcy Petition in the United States Bankruptcy Court for the Eastern District of Pennsylvania which is currently at issue.  On or about October 26, 2021, AJX filed its Proof of Claim setting forth the amount past due and owing under the Mortgage.  On November 8, 2021 AJX filed a Motion to Stay the First Quiet Title Action Pursuant to 11 U.S.C. § 362 (AJX's "Motion for Stay").  (Motion to Stay, Bankr. ECF No. 33.)  In its Motion to Stay, AJX sought to stay – during the pendency of his Bankruptcy Petition/Case – the state court quiet title action that was instituted by Taggart.  On November 9, 2021, AJX filed a Motion for Turnover of Non-Estate Property of Rents for 7242 Saul Street

("Motion to Turnover Rent").  (Motion to Turnover Rent, Bankr. ECF No. 39.)  On February 9,

2021, AJX filed a Motion to Determine the Priority of its Secured Claim Pursuant to 11 U.S.C. §

502 and Fed. R. Bankr. P. 3001 (AJX's "Motion to Determine").  (Motion to Determine, ECF

No. 119.)

  The Bankruptcy Court ruled in favor of AJX on all issues, and Taggart filed the three

appeals that are currently at issue in this proceeding.  Taggart then – on May 3, 2022 – filed

motions for stay of the Bankruptcy Case in each of the three appeals pending before the Court.

(Motion to Stay.)  He moved to stay the Bankruptcy Case by attacking its jurisdiction to

adjudicate claims between himself and the Appellees/Respondents while his state court quiet title

action was pending.  (*Id.* page 5, 8.)  He further seemed to argue that the mandatory abstention

doctrine should apply to prevent the federal court system from adjudicating his state court quiet

title action; therefore, his Bankruptcy Case should be stayed pending the outcome of related state

court litigation.  (*Id.* page 3.)

  On May 4, 2022, the Bankruptcy Court dismissed Taggart's Bankruptcy Petition/Case.

(Order 5/4/22, Bankr. ECF No. 223.)  In dismissing Taggart's Petition/Case, The Bankruptcy

Court relied on the fact that Taggart failed to present a viable reorganization plan under Chapter

11.  (Bankr. Transcr. 5/4/22 page 13.)  The Court did not rule on Taggart's outstanding motion to

permit a structured dismissal, and it did not convert his Chapter 11 Petition to a proceeding under

Chapter 7.

**I. A.    The Three Motions Filed by Appellees/Respondents and the Related Bankruptcy Court Orders at Issue in These Three Appeals:**

      **1.    Appeal from the Bankruptcy Court Order Pertaining to AJX's Motion to Stay the First Quiet Title Action – *In re Taggart*, 22-cv-0586-JMY:**

On November 8, 2021, AJX filed a Motion to Stay the First quiet title action pursuant to 11 U.S.C. § 362 (AJX's "Motion for Stay"). (Motion for Stay, Bankr. ECF No. 33.) On November 10, 2021, a hearing was held on AJX's Motion for Stay (Bankr. ECF 41), and on November 12, 2021, the Court entered an Order granting the Motion which reads as follows:

> AND NOW, this [12th] day of [November], 2021, upon consideration of the Motion for Imposition of the automatic stay provisions of 11 U.S.C. § 362 as to the state court quiet title action filed by Debtor Kenneth J. Taggart dba Kenneth J. Taggart, Landlord against AJX Mortgage Trust I, a Delaware Trust, Wilmington Savings Fund Society, FSB, Trustee docketed in the Philadelphia County Court of Common Pleas at January Term, 2015, No. 01366 and for Expedited Consideration With Limited Electronic Notice Thereof Pursuant To Local Bankruptcy Rule 5070-1(g), IT IS HEREBY ORDERED: *(1.)* Said Motion is GRANTED; *(2.)* The quiet title action docketed in the Philadelphia County Court of Common Pleas at January Term, 2015, No. 01366 is hereby stayed until the earlier of *(1)* the dismissal of Debtor Kenneth J. Taggart dba Kenneth J. Taggart, Landlord bankruptcy petition docketed at 21-12476- AMC or *(2)* further Order of Court modifying the automatic stay in this matter; and *(3.)* This Order shall be effective immediately and shall not be subject to the ten (10) day period as set forth in Bankruptcy Rule 40001(a)(3).

(Order, Appellant's Ex. A-1; Bankr. ECF No. 43.)

On November 12, 2021, Taggart filed a Motion for Reconsideration of the Court's Order, which was denied on January 6, 2021. (Bankr. ECF No. 45, 72.) On January 6, 2022, Taggart filed a Motion for Relief from Stay Imposed on Debtor on 11/11/2011. (Motion for Relief, Bankr. ECF No. 78.) On February 2, 2022, the Bankruptcy Court held a hearing on Taggart's Motion for Relief from Stay, and following the hearing on February 3, 2022, the Court entered an order denying the request to remove the stay. (Order 2/3/2022, Ex. A-16; Bankr. ECF No. 108.) On February 15, 2022, Taggart filed his Notice of Appeal from the denial of his Motion

for Relief from Stay, thereby commencing this Appeal – *In re Taggart*, 22-cv-0586.  (Notice of

Appeal (*In re Taggart*, 22-cv-0586), ECF No. 1.)

2.      **Appeal from the Bankruptcy Court Order Pertaining to AJX's Motion for Turnover of Rents – *In re Taggart*, 22-cv-0475-JMY:**

On November 9, 2021, AJX filed its Motion for Turnover of Non-Estate Property, and on

November 22, 2021, Taggart filed his response in opposition.  (Taggart's Ex. A-3, Bankr. ECF

No. 39 & 53.)  The Motion sought to enforce an assignment of rent provision contained in the

Mortgage executed in relationship to 7242 Saul Street, Philadelphia, Pennsylvania.  (*Id.*)  On

December 8, 2021, the Bankruptcy Court held a hearing on AJX's Motion, and following that

hearing, an Order was entered granting the Motion which reads as follows:

> AND NOW, this [8th] day of [December], 2021 upon consideration of the Motion filed by AJX Mortgage Trust I, a Delaware Trust, Wilmington Savings Fund Society, FSB, Trustee (hereinafter "AJX Mortgage") as it relates to that certain property commonly known at 7242 Saul Street, Philadelphia, PA 19149 (hereinafter the "Saul Street Property") IT IS HEREBY ORDERED: *(1.)* Said Motion is GRANTED; *(2.)* AJX Mortgage is hereby authorized to enforce the assignment of rents as to the real property commonly known as the Saul Street Property; *(3.)* The Debtor is hereby prohibited from using rental income derived from the Saul Street Property; *(4.)* The Debtor is hereby required to produce an accounting of the rents received on the Saul Street Property, including and copies of all leases within ten (10) days from the entry of this Order; (5.) Within ten (10) days from the entry of this Order the Debtor is hereby required to provide the name of the institution, location, and account number where all tenant security deposits are currently held for the Saul Street Property; *(6.)* The Debtor shall turnover the rental income collected after filing the instant bankruptcy proceeding, and that the tenants occupying the Saul Street Property be directed by this Court to make their monthly payments to AJX Mortgage directly: *(7.)* The Debtor shall turnover all rents collected since the demand for rents was issued from October 1, 2021 to November 9, 2021, and for each month thereafter; *(8.)* Within 5 days of the Order approving the relief requested in this motion, Debtor shall pay AJX Mortgage the sum of $1,800.00 representing the rents from October 1, 2021 to November 9, 2021; *(9.)* To the extent the Debtor continues to interfere and prohibit the turnover of rents, or if the Debtor collects the rents himself and fails to turnover said rents to AJX Mortgage, or to the extent the rents are paid to anyone else, AJX Mortgage respectfully requests that this Court sanction the Debtor $1,000.00 per month for his failure to comply with this Order; and *(10.)* This Order shall be effective

immediately and shall not be subject to the ten (10) day period as set forth in Bankruptcy Rule 40001(a)(3).

(Order 12/8/21, Bankr. ECF No. 63.)  The order directed the tenants of Saul Street Property to turnover rents to creditor AJX, and authorized AJX to enforce assignment of rent as to the real property.  (*Id.* ¶¶ 2, 6.)  On December 22, 2021, Taggart filed a Motion for Reconsideration of the Bankruptcy Court's Order, and on January 4, 2022, AJX filed a response in opposition.  (Taggart's Ex. A-4, A-5.)  On January 5, 2022, the Bankruptcy Court held a hearing on Taggart's Motion for Reconsideration, and on January 6, 2022, it entered an Order denying Taggart's Motion for Reconsideration.  (Taggart's Ex. A-7, A-8, Bankr. ECF No. 72.)

On February 4, 2022, Taggart filed his Notice of Appeal from the December 8, 2021 Order entered by the Bankruptcy Court that granted the motion to turnover rent, thereby commencing this Appeal – *In re Taggart*, 22-cv-0475-JMY.  (Notice of Appeal – *In re Taggart*, 22-cv-0475-JMY, ECF No. 1.)

3.    **Appeal from the Bankruptcy Court Order Pertaining to AJX's Motion to Determine the Priority of its Secured Claim under 11 U.S.C. § 502 – *In re Taggart*, 22-cv-1031-JMY:**

On February 9, 2021, AJX filed a Motion to Determine the Priority of its Secured Claim pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3001 ("Motion to Determine").  (Motion to Determine, Bankr. ECF 119.)  On March 9, 2022 the Bankruptcy Court held a hearing on the Motion to Determine (Bankr. ECF No. 151), and on March 10, 2022, the Bankruptcy Court granted AJX's Motion to Determine with an order that reads as follows:

AND NOW, this [10 day of March, 2022], upon consideration of AJX Mortgage Trust I, a Delaware Trust, Wilmington Savings Fund Society, FSB, Trustee's ("AJX Mortgage") Motion to Determine the Amount and Priority of its Secured Claim Pursuant to 11 U.S.C. §502, and the opposition filed thereto by the Debtor, and after a hearing on the merits of this Motion before this Court IT IS HEREBY ORDERED AND ADJUDGED: *(1.)* AJX Mortgage holds an enforceable, valid and properly perfected first mortgage lien on the Debtor's Property commonly known

as 7242 Saul Street, Philadelphia, PA 19149.  *(2.)* AJX Mortgage's secured claim
is hereby fixed pursuant to 11 U.S.C. §502 in the total amount as set forth and
documented in Proof of Claim 6-1 filed 10/26/2021 in the amount of $409,496.16.
*(3.)* AJX Mortgage is entitled to enforce the July 20, 2005 Adjustable Rate Note in
the principal amount of $120,000.00 made payable to Chase Bank, USA, NA,
which note has been endorsed and made payable to several lenders and is now in
the possession and control of AJX Mortgage. AJX Mortgage also has the right to
enforce that certain Mortgage recorded in the Philadelphia County Recorder of
Deeds on August 11, 2005 at Instrument No. 51241165, together with all
Assignments of this Mortgage as evidenced in Proof of Claim 6-1.

(Order 3/10/22, Bankr. ECF 152.)

On March 17, 2022, Taggart responded by filing a notice of appeal to this Court.  (Notice

of Appeal – *In re Taggart*, 22-cv-1031-JMY, ECF No. 1.)

Prior to the point in time when the Bankruptcy Court ruled on the Motion to Determine,

Taggart commenced an adversary action against AJX, which he claimed was necessary because

the 502 Motion was "procedurally improper and . . . fail[ed] to effectuate due process."  (Adv.

Compl., E.D. Pa. Bankr. No. 22-00019, at ¶ 1; Bankr. ECF No. 147.)  Specifically, on February

23, 2022, Taggart filed an adversary complaint, which purported to assert nineteen (19) causes of

action against AJX, all premised on their alleged inability to foreclose (or otherwise enforce the

Note and Mortgage).  (*Id.*)  On March 29, 2022, AJX filed a motion to dismiss the adversary

action (Motion for Prospective In-Rem Relief, Bankr. ECF No. 181), which remained pending as

of May 4, 2022, when the underlying Bankruptcy Case was dismissed.  (Order 5/4/22, ECF No.

223.)

## II.    STANDARD OF REVIEW:

In an appeal from a bankruptcy court's decision, the district court applies two different

standards of review.  The district court reviews factual findings of the bankruptcy courts under a

clearly erroneous standard.  *In re Sharon Steel Corp.*, 871 F.2d 1217, 1222 (3d Cir.1989); *U.S.*

*Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 138 S. Ct. 960,

966 (2018), Bankr. Rule 8013.  A bankruptcy court's conclusions of law, however, are subject to de novo review.  *Id.*  A finding is clearly erroneous only if it "either is completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data."  *Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*, 57 F.3d 1215, 1223 (3d Cir. 1995).  "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."  *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).  This Court "may affirm on any ground supported by the record," even if it was not relied on by the bankruptcy court.  *See Otto v. Pa. State Educ. Ass'n-NEA*, 330 F.3d 125, 140 n.17 (3d Cir. 2003).

Both bankruptcy and federal district courts are "courts of limited jurisdiction," and may only hear cases pursuant to authority expressly granted by statute and/or under the U.S Constitution.  *See Jackson v. Delaware River and Bay Authority*, 224 F. Supp. 2d 834, 841 (D.N.J. 2002) (citing *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994))."  Moreover, Article III limits the exercise of this authority to "actual and ongoing" "cases and controversies," which generally requires a legal dispute that: (1) is "real and not hypothetical," (2) "affects an individual in a concrete manner," and (3) involves "parties sufficiently adverse parties so as to sharpen the issues for judicial resolution.'"  *Providence Pediatric Med. Daycare Inc. v. Alaigh*, No. 16-1883, 672 F. App'x 172, 175 (3d Cir. Dec. 6, 2016) (citing *Rendell v. Rumsfeld*, 484 F.3d 236, 240 (3d Cir. 2007)).

These requirements ensure the effective utilization of judicial resources – in cases where they are able to grant relief – the absence of which renders a case moot.  *Cnty. of Morris v. Nationalist Movement*, 273 F.3d 527, 533 (3d Cir. 2001) ("The mootness doctrine is centrally concerned with the court's ability to grant effective relief."); *Gayle v. Warden Monmouth Cnty.*

*Corr. Inst.*, 838 F.3d 297, 303 (3d Cir. 2016) ("A case is moot where the underlying issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.") (*citing Chafin v. Chafin*, 568 U.S. 165, 172 (2013)).  Moreover, the case and controversy requirements must remain present "throughout all stages of federal judicial proceedings, including appellate review." *Koons v. XL Insurance America, Inc.*, 620 F. App'x 110, 5 (3d Cir. 2015) (*citing Rendell v. Rumsfeld*, 484 F.3d 236, 240-41 (3d Cir. 2007)).  Accordingly, even if jurisdiction may have existed when an appeal is first taken, "if an event occurs . . . that makes . . . grant[ing] any effectual relief [impossible] . . . the appeal must be dismissed [as moot]." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992); *accord In re PWS Holding Corp.*, 228 F.3d 224, 236 (3d Cir. 2000) (explaining that an appeal may be rendered constitutionally moot if events have taken place that make it impossible for the court to grant any relief whatsoever).

These same principles apply to bankruptcy appeals, and "[w]here a bankruptcy case is dismissed, issues on appeal relating to that dismissed bankruptcy case are rendered moot." *Aponte v. Copley (In re Aponte)*, No. 18-05108, 2019 U.S. Dist. LEXIS 138012, at *7 (E.D. Pa. Aug. 15, 2019) (*citing In re Ponton*, 446 F. App'x 427, 429 (3d Cir. 2011); ("An unchallenged dismissal of a bankruptcy case moots a dispute about a stay because the stay, to be valid, requires a pending bankruptcy case.").  The determination of whether an appeal is moot after the bankruptcy case is dismissed "hinges on the question of how closely the issue in the case is connected to the underlying bankruptcy." *Tellewoyan v. Wells Fargo Home Mortg.,* No. 05-4653, 2006 U.S. Dist. LEXIS 55558, at *3-4 (D.N.J. Aug. 10, 2006) (*quoting In re Pattullo*, 271 F.3d 898, 901 (9th Cir. 2001)).

III.    **DISCUSSION:**

The Court will grant the Appellees/Respondents' motions to dismiss the three appeals at issue in this matter because they are effectively moot based on the Bankruptcy Court's dismissal of the underlying Bankruptcy Petition.  The Bankruptcy Court dismissed the Bankruptcy Case because it found that there was no reasonable likelihood of rehabilitation under Fed. R. Bankr. 1112(b)(4)(A).  In making this finding, the Bankruptcy Court relied on the fact that Taggart's debt to income ratio was so disproportionate that it would be unlikely that he would be able to present a feasible Chapter 11 bankruptcy plan.  (Bankr. Transcr. 5/4/22 page 13.)  It should also be mentioned that Taggart failed to present any bankruptcy plan at all despite the expiration of the deadline for presentation of a reorganization plan.  (*Id.* page 5 & 12.)

The dismissal of Taggart's Bankruptcy Petition/Case had the effect of placing the Parties in their original positions.  After dismissal of a bankruptcy case, all property of the bankruptcy estate revests in the debtor or any other entity in which the property was vested before commencement of the bankruptcy case; essentially, dismissal returns the parties to the prebankruptcy *status quo ante*.  11 U.S.C. § 349(b)(3); *see also Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 456 (2017).  The bankruptcy court may, however, "order[ ] otherwise" upon a finding of cause. 11 U.S.C. § 349(b).  In the case *sub judice*, the bankruptcy record is devoid of any condition being placed on the dismissal of the Bankruptcy Petition/Case.

The Bankruptcy Court's dismissal of the Bankruptcy Petition/Case effectively lifted the stay of proceedings entered in relationship to the state court quiet title action that was filed by Taggart.  The Bankruptcy Court order that granted AJX's motion to stay the state court quiet title action clearly reads, "The quiet title action docketed in the Philadelphia County Court of Common Pleas at January Term, 2015, No. 1366 is hereby stayed until…the dismissal of the

Debtor [Taggart's] bankruptcy petition docketed at 21-12479-AMC.  (Order 11/12/21, ECF No.

43.)  On May 4, 2022, the Bankruptcy Court dismissed the Bankruptcy Petition; therefore, the

appeal that Taggart filed with this Court in relationship to the stay of his quiet title action – *In re*

*Taggart*, 22-cv-0586-JMY – is now moot.  *Aponte*, 2019 U.S. Dist. LEXIS 138012, at *7

(debtor's appeal from "bankruptcy court's order memorializing [a] settlement agreement . . . and

lifting the automatic stay" was rendered moot where, "[b]efore briefing . . . could be

completed[,] the bankruptcy court dismissed [the] bankruptcy case for [debtor's] failure to pay

the filing fee—a valid basis for dismissal."); *Goldsmith v. Winnecour*, 485 B.R. 522, 527 (W.D.

Pa. Bankr. 2013) (after bankruptcy case was dismissed, court was powerless to afford relief

relating to the lifting of stay thus the appeals were dismissed as moot); *In re Ponton*, 446 F.

App'x at 429 ("it would serve no purpose for us to determine whether the Bankruptcy Court

properly lifted the automatic stay now that there is no bankruptcy proceeding whatsoever in

which to ground a stay . . . even if the Bankruptcy Court's lifting of the stay was somehow

erroneous, we could not redress it now that an order of dismissal . . . has been entered."); *In re*

*Jeffrey D. Bros.*, No. 19-3310, 2020 U.S. Dist. LEXIS 40934, at *7 (E.D. Pa. Mar. 10, 2020)

(finding dismissal of bankruptcy action mooted creditor's appeal "insofar as it [sought] relief

from the stay and to revoke the confirmed payment plan . . . due to fraud. . . . [b]ecause . . . there

[was] no longer a bankruptcy stay in place or a confirmed payment plan, [and as such,] the Court

[could not] grant . . . effective relief") (*citing Montelione v. Fannie Mae*, 183 F. App'x 200, 201

(3d Cir. May 15, 2006) (finding voluntary dismissal of bankruptcy proceeding mooted a pending

appeal that sought relief from an order lifting the automatic stay).

 The Bankruptcy Court order entered in relationship to AJX's Motion to Determine is also

moot.  *Knaak v. Wells Fargo Bank, N.A. (In re Knaak)*, 825 F. App'x. 83 (3d Cir. September 28,

2020) (the dismissal of a bankruptcy case may moot an appeal arising from the debtor's bankruptcy proceeding which is dependent on the existence of a bankruptcy petition).  The fact that the Bankruptcy Court never ruled on Taggart's complaint in the adverse action or AJX's motion to dismiss the adverse complaint is critical to the analysis of issues raised on appeal in relationship to AJX's Motion to Determine.  AJX's Motion to Determine was expressly based on its proof of claim, and was filed under Fed. R. Bankr. P. 3001(f) and § 504 in accordance with the bankruptcy claims allowance process.

In granting the Motion to Determine, the Bankruptcy Court essentially found that AJX had a right to be paid from the bankruptcy estate which ceased to exist as of May 4, 2022 when it dismissed the Bankruptcy Petition/Case.  Therefore, no actual case or controversy exists at the present time as to the priority of creditors and the right to be paid from the bankruptcy estate which is now non-existent.  Any dispute around the amount of the claim or priority of the creditors in a Chapter 11 reorganization plan is now moot because no plan was every approved. *Van Dyke v. Ally Fin. Inc.*, No. 20-6158, 2021 U.S. Dist. LEXIS, at *6-7, 10 (D.N.J. Mar. 23, 2021) (dismissal of underlying bankruptcy case mooted debtor's appeal of the order dismissing her adversary complaint, which "focus[ed] on her belief that the sales contract and other underlying documentation that would serve as the basis for a proof of claim [in connection with her purchase of a vehicle] . . .were invalid . . . [and asked the] bankruptcy court to declare the sales contract and vehicle's order "null and void," and to "(s)trike [and prohibit any further] Proof Of Claim."); *In re Galluzzo*, No. 06-15392, 2018 Bankr. LEXIS 2436, at 28-29 (D.N.J. August 14, 2018) (noting that "[t]he bankruptcy claims allowance process arises only in the context of a bankruptcy case.").

The Bankruptcy Court Order that granted Appellees/Respondents' motion to turnover rent is essentially moot following the Bankruptcy Court's dismissal of Taggart's Petition/Case. There is no indication that the Appellees/Respondents have sought to enforce the Order since dismissal of the Bankruptcy Petition/Case.  To the contrary, Appellees/Respondents have filed pleadings with the Court in this action in which they clearly take the position that the Order is no longer in effect; therefore, illustrating their position that they are no longer entitled to collect rent from the tenants of 7242 Saul Street based on the Order entered by the Bankruptcy Court. (Motion to Dismiss Appeals page 7, ECF No. 19-1 page 7; Response in Support of Motion to Dismiss, ECF No. 4 page 4.)  However, Taggart argues that the Order directing him to turnover rent is not moot on appeal because he complied with the bankruptcy Court Order and forwarded rent that he collected from the tenants to the Appellees/Respondents during the pendency of the Bankruptcy Case.

To the extent issues raised in this appeal are not moot, the Bankruptcy Court committed no error in ordering Taggart to turnover rent.  Taggart's briefing on appeal is convoluted, and at the risk of mischaracterizing Taggart's arguments, the Court is able to discern three basic arguments presented on appeal in relationship to the Order to turnover rent.  First, Taggart attacks the Bankruptcy Court's jurisdiction or authority to decide the dispute related to rent proceeds derived from 7242 Saul Street because the property was subject to ongoing litigation in state court – including the quiet title action.  (Taggart's Brief page 8, ECF No. 12.)  Taggart argues that he did not consent to the Bankruptcy Court's exercise of jurisdiction over what he characterizes as a non-core proceeding.  (Taggart's Brief page 7, ECF No. 12.)  Along these same lines, he argues that the Bankruptcy Court should have applied the doctrine of mandatory abstention and abstained from deciding an issue that was subject to previously filed and pending

litigation in state court.  (Taggart's Brief page 12, 13-14, ECF No. 12.)  Finally, Taggart argues that his due process rights were violated because he was not afforded a meaningful hearing prior to being deprived of his property rights in rent proceeds.  (Taggart's Brief page 7, 23.) Specifically, he argues that he was deprived of sufficient notice prior to the Bankruptcy Court holding the hearing, and he argues that he was not afforded an opportunity to conduct discovery, cross-examine witnesses or present evidence at the hearing.  (Taggart's Brief page 23, Taggart's Reply Brief page 1, ECF No. 18.)

Taggart filed his Bankruptcy Petition in the Bankruptcy Court located in the Eastern District of Pennsylvania; therefore, the Bankruptcy Court had jurisdiction to decide what property would be included in any potential bankruptcy estate under a possible Chapter 11 reorganization plan.  In ruling on AJX's Motion to Turnover Rent, the Bankruptcy Court essentially found that rent proceeds were not property of the bankruptcy estate that would be subject to any potential Chapter 11 reorganization.  During the hearing on AJX's Motion, Taggart argued, "Your Honor, I believe it's a non-core [issue]."  (Bankr. Transcript page 7 (2/15/22); ECF no. 122.)  To which the Bankruptcy Court stated, "I know, I saw all of your arguments, and I simply disagree."  (*Id.*)

Bankruptcy jurisdiction generally extends to four categories of cases and proceedings, which include: (a) cases "under" Title 11; (b) proceedings "arising under" Title 11; (c) proceedings "arising in" a bankruptcy case; and (d) proceedings "related to" a bankruptcy case. *In re Combustion Engineering, Inc.*, 391 F.3d 190, 225-226 (3d. Cir. 2005) (*citing* 28 U.S.C. § 1334(b)).  Bankruptcy courts have unlimited authority to adjudicate the first three categories of "core" proceedings – but the last category (of "non-core" proceedings) is generally limited to submitting proposed findings of fact and conclusions of law, unless the parties expressly consent

to bankruptcy court's jurisdiction. *Mellon v. Del. & Hudson R.R. (In re Del. & Hudson R.R)*, 122 B.R. 887, 890 (D. Del. 1991) (discussing the difference between core and non-core proceedings in bankruptcy litigation).

To determine whether a proceeding is core, courts in the Third Circuit apply the two-part test adopted in *Halper v. Halper*, 164 F.3d 830, 836 (3rd Cir.1999), which instructs courts to first look to whether the proceeding is listed among the non-exhaustive list of core proceedings described in 28 U.S.C. § 157(b)(2)(A)-(O), and second, apply the facts to determine whether the claim "(1) invokes a substantive right provided by title 11 or (2) if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case." *Id.*; *see also In re John A. Rocco Co., Inc.*, No. 10-18799, 2015 Bankr. LEXIS 1283, at *11 (Bankr. D.N.J. Apr. 13, 2015) (citing *Halper v. Halper*, 164 F.3d 830, 836 (3rd Cir. 1999) (*quoting In re Guild & Gallery Plus, Inc.*, 72 F.3d 1171, 1178 (3rd Cir.1996)).

The Bankruptcy Court did not err in rendering a decision on this issue because AJX's Motion to Turnover Rent implicated core proceedings that related to the administration of the bankruptcy estate pursuant to 28 U.S.C. §§ 157(b) and 1334. AJX's Motion requested relief that directly implicated the "scope and extent of property of the [estate] . . . [and] allocation of assets among creditors . . . [which] issues are traditionally the province of the Bankruptcy Court and . . . constitute 'core proceedings' . . . under 28 U.S.C. § 157(b)." *Janazzo, Sr. v. Fleetboston Fin. Corp.*, No. 01-6939, 2002 U.S. Dist. LEXIS 451, at *7-8 (N.D. Ill. Jan. 15, 2002) ("the determination of whether property of the Debtor is subject to a constructive trust . . . has widely been held to be a 'core proceeding' within the jurisdiction of the federal bankruptcy courts.") (citing *In re Robert D. Johnson*, 960 F.2d 396, 401 (4th Cir.1992) ("clearly, the only proper forum for determining whether assets held by a debtor are held in constructive trust is the

bankruptcy court, and such proceedings must be considered core proceedings")).  Therefore, the Bankruptcy Court did not need to abstain from ruling on this issue.

The Bankruptcy Court did not violate Taggart's due process rights.  The Bankruptcy Court noticed, scheduled and held hearings on Appellees/Respondents' Motion to Turnover Rent and Taggart's Motion for Reconsideration.  The assignment of rent provision appeared in the Mortgage note executed in relationship to the credit arrangement for 7242 Saul Street, and Appellees/Respondents served Taggart with a demand to turnover rent.  Under Pennsylvania law assignment of rent provisions are valid.  *See Metropolitan Life Ins. Co. v. Liberty Center Venture,* 650 A.2d 887, 890-91 (Pa. Super. Ct. 1994) (holding that a mortgagee is entitled to the appointment of a receiver for a mortgaged property if the mortgage expressly provides for such appointment as remedy following default); *Associated Co. v. Greenhut, (In re Weiss)*, 66 F.2d 428, 429 (3d Cir. 1933) ("[t]he rule of law in this circuit is uniform that, as between mortgagee and trustee in bankruptcy, the rents, collected between adjudication and the sale under foreclosure proceedings belong to the mortgagee under claim of deficiency where the proceeds of the sale are insufficient to pay the mortgage indebtedness.").  Where a mortgage contains a valid assignment of rents provision, the mortgagee obtains a lien in any rents and profits for mortgaged property, which attaches (and is "perfected" for bankruptcy purposes) upon the mortgage's execution, delivery, and recording.  *See Sovereign Bank v. Schwab*, 414 F.3d 450, 453 (3d Cir. 2005). This interest remains valid and enforceable, subject only to third party claims, until the mortgagee proceeds to enforce its rights by demanding turnover, at which point the mortgagee is deemed to acquire constructive possession.  *See Commerce Bank v. Mountain View Village, Inc.*, 5 F. 3d 34, 39 (3rd Cir. 1993) (by sending tenants notice informing them that

it would be collecting their rents, the bank enforced its rights under the mortgage and obtained constructive possession of the properties and title to the rents).

The three motions filed by Taggart to stay the Bankruptcy Case are also moot.  Taggart filed his Motions to Stay on May 3, 2022.  The next day on May 4, 2022, the Bankruptcy Court dismissed his Bankruptcy Petition/Case.  Following dismissal of his Bankruptcy Petition/Case, there was nothing for this Court to stay.  The Parties – including Taggart – are free to proceed with their claims in state court.  The Bankruptcy Court essentially granted Taggart the relief requested in his Motion to Stay in which he argued, "These claims should be stayed pending the appeals, or dismissed without prejudice so they may proceed in state court."  (Motions to Stay page 8.)

## IV.    CONCLUSION:

For these reasons, the bankruptcy appeals filed by Taggart will be dismissed as moot and/or without merit.  An appropriate order will be filed by the Court.


BY THE COURT:

   /s/ John Milton Younge   
Judge John Milton Younge